A93A0604. WILSON v. SOUTHERN RAILWAY COMPANY et al.
(431 SE2d 383)

BIRDSONG, Presiding Judge.

Appellant/plaintiff Willie W. Wilson, Jr. filed a complaint, as amended, against appellees/defendants Southern Railway Company (Southern), Cannon Express Corporation (Cannon), Jeffrey R. Walsh (Walsh), and National Continental Insurance Company (National). Appellant alleges that the combined negligence of appellees caused him to sustain severe injuries as a result of a railroad crossing colli-

sion between a Southern train and a tractor-trailer owned by Cannon, driven by Walsh, and insured by National.

Plaintiff was a brakeman employed by Southern. The train crew and engineer (crew) noticed a tractor-trailer rig stopped on the railroad crossing. The train was approximately one-and-one-half miles from the crossing at that point and traveling approximately 40 mph; it was over a mile in length. When the train was between one and one-and-one-half miles from the crossing, the crew observed that the rig still was not moving and the engineer applied the train brakes. Although the conductor estimated that he first observed the rig about three-quarters of a mile away from the crossing, it then appeared to be stopped and he could tell it was unable to move. Approximately one-quarter of a mile from the crossing, it appeared to the engineer that the rig was not going to move and that normal braking would not suffice; the engineer applied the emergency brakes. The train collided with the rig, injuring appellant.

The trial court granted National's, Cannon's, and Walsh's motion for directed verdict at the conclusion of plaintiff's case; the jury returned a verdict in favor of appellee Southern. This appeal is from the judgment granting said motion for directed verdict, and from the jury verdict in behalf of Southern. *Held*:

1. Appellees Cannon, Walsh and National assert that the appeal should be dismissed because appellant filed his notice of appeal prematurely. Judgment was filed and entered on the jury verdict in favor of Southern on July 14, 1992; judgment was filed and entered on July 23, 1992, granting in writing the motion for directed verdict in favor of Cannon, Walsh and National; on July 17, 1992, a notice of appeal was taken from the order of July 14, 1992, and from the oral order of the trial court on July 8, 1992, granting the motion for directed verdict on the record. The notice of appeal was not premature as to the appeal of the judgment entered on July 14, 1992. Accordingly, "all *judgments*, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the *judgment*, ruling, or order standing alone and without regard to whether the *judgment*, ruling, or order appealed from was final or was appealable by some other express provision of law." (Emphasis supplied.) OCGA § 5-6-34 (d), as amended. Moreover, assuming arguendo the notice of appeal, as filed, was technically defective, it was "sufficient to notify the opposing party that an appeal was being taken [and] it was not so defective as to mislead or prejudice him," within the meaning of *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58, 60 (311 SE2d 470). Compare *Realty Trading Co. v. Fiduciary Leasco*, 200 Ga. App. 261 (1a) (407 SE2d 486). Additionally, if the appeal had been premature by attempting to appeal the oral order granting di-

rected verdict, the notice of appeal would have "ripened" when the written order thereof subsequently was entered. See *O'Kelly v. State,* 196 Ga. App. 860 (1) (397 SE2d 197). For each of these reasons, appellees' assertion of lack of appellate jurisdiction is without merit.

2. The trial court did not err in granting the motion for directed verdict in favor of appellees Cannon, Walsh, and National. " 'It is not error to direct a verdict if the evidence and all reasonable deductions therefrom, considered in the light most favorable to the respondent to the motion, demands the verdict and fails to disclose any material issue for jury resolution.' [Cits.] A directed verdict is proper even where there is conflicting evidence where the plaintiff simply failed to prove his case." (Emphasis omitted.) *Chester v. Bouchillon,* 253 Ga. 175, 177 (3) (317 SE2d 525). "Negligence is not to be presumed, but is a matter for affirmative proof." *Johnson v. Critter Getters Exterminating Co.,* 194 Ga. App. 314, 316 (390 SE2d 434). Thus, as a general rule, "[t]he mere fact of injury or damage does not give rise to a presumption or inference of negligence." *Housing Auth. &c. v. Famble,* 170 Ga. App. 509, 524 (317 SE2d 853). "In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence." *Johnson,* supra.

*Hardy v. Brooks,* 103 Ga. App. 124 (2) (118 SE2d 492) involved an appeal from a judgment overruling general demurrers to an amended petition, and is distinguishable factually from the case at bar. Moreover, there exists no evidence in the record that the dangerous situation of the rig being stalled on the railroad crossing was "created" by any act or omission, negligent or otherwise, of appellee Walsh within the meaning of *Hardy,* supra. See also *Chastain v. Fuqua Indus.,* 156 Ga. App. 719, 721 (1) (275 SE2d 679). Secondly, the existence of the rig was apparent immediately to the engine and train crew as soon as the train rounded a curve in the track, and the conductor realized the truck was stopped and unable to move when he saw it about three-quarters of a mile from the crossing. There exists no duty to warn of the obvious. See generally *Soto v. Roswell Townhomes,* 183 Ga. App. 286, 287 (358 SE2d 670).

Additionally, there exists no evidence which affirmatively establishes that, under the attendant emergency conditions, appellee Walsh could have provided a warning to the crew adequate to avoid the collision. The law will not require a useless act (*Southern R. Co. v. Lawson,* 256 Ga. 798, 800 (1b) (353 SE2d 491)). Cf. *Hildebrand v. Los Angeles &c. R. Co.,* 350 P2d 65, 67 (2) (SC Calif.) (any warning by the crew under the circumstances would have been futile to prevent the collision at the crossing with the oncoming motorcycle). Unless there exists some evidence of record, albeit slight, from which a factfinder could reasonably infer or directly find that an adequate warning could have been given that would have avoided the collision,

the lack of a warning would not preclude the granting of a directed verdict in favor of appellees Cannon, Walsh, and National.

Appellant testified without objection that the engineer could have stopped the train a long way from the crossing if he knew what was happening. However, he also testified that, even assuming a person knew the correct number to call in Atlanta, a warning radio call could not have been relayed to the train in two or three minutes and probably not even in ten or fifteen minutes. No evidence of record establishes that the truck driver knew whom to call in Atlanta or the dispatcher's number, or that he had access to a phone; there was no emergency phone at the crossing. Further, it would only take between one and two minutes for the train to reach the crossing after it rounded the curve, and appellant was unaware how long the rig had been stalled at the crossing before the train appeared in view. Appellant testified that before he was two or three train car lengths from the crossing, he saw a man at the crossing, who he believed to be the driver, waving a warning signal. Appellant further testified that if the man had come down the tracks *for an unspecified distance* and given the same warning signal, the collision "probably would have not happened." However, appellant also testified that right after the train rounded the curve the crew saw the truck; shortly thereafter, the conductor said the truck may not move so the engineer "started throttling off" (slowing the train); a little further down the track, the conductor said they ought to get some brakes, so the engineer "started putting the brakes on." The brakes were initially applied one-half to one mile from the crossing. Appellant made an admission that he knew there was a "pretty good danger" when the train reached the brick yard (about a quarter of a mile from the crossing), and at that point the emergency brakes were applied. Even then the train went at least three to four cars beyond the crossing after striking the truck. From this testimony, it is established without contradiction that anyone giving an adequate warning would have had to have been far enough up the tracks and in a visible location so as to alert the crew and allow them enough reaction time to apply their emergency brakes more than four car lengths beyond the brick yard. There exists no evidence of record from which the jury could conclude that appellee Walsh had the *time and opportunity,* under the existing emergency conditions, to position himself in such a manner as to give an adequate warning.

Additionally, after testifying that if the emergency brakes had been applied when the crew first saw the truck and that the train would have stopped short of it, appellant gave the following vague and equivocal testimony: "If we was in emergency when we first come around [the curve], we would have got stopped probably right at it *or may have still got to it.* It is hard to say what a train [is] going to

do." (Emphasis supplied.)

In considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267). In *Douglas v. Sumner*, 213 Ga. 82 (3) (97 SE2d 122), however, the Supreme Court applied the established rule that " '[t]he testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him when it is self-contradictory, vague, *or* equivocal,' " and concluded the trial court did not err in granting nonsuit at the conclusion of plaintiff's testimony. (Emphasis supplied.) In *Marett v. Professional Ins. Careers*, 201 Ga. App. 178 (1c) (410 SE2d 373), this court expanded upon and applied this rule holding: " 'The law in this state is that the testimony of a party offering himself as a witness in his own behalf is to be construed most strongly against him when it is contradictory, vague or equivocal [cit.]; even as against a directed judgment, [cits.], and that construction *most unfavorable to his position* should generally be adopted. [Cit.] If that most unfavorable position shows that the party is not entitled to prevail, unless other evidence shows compellingly that he should prevail, he must lose. [Cit.]' *Veal v. Fraser*, 155 Ga. App. 157, 161 (2) (270 SE2d 250)." (Emphasis supplied.) See *Johnson v. Curenton*, 127 Ga. App. 687, 690 (195 SE2d 279). However, if a reasonable explanation is subsequently offered by the witness as to why his testimony was contradictory, vague, or equivocal, the testimony will not be construed against the party-witness; the burden rests upon the party giving such testimony to offer a reasonable explanation, and whether this has been done is an issue of law for the trial judge. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680). Appellant's testimony regarding whether the train could have been stopped, by immediate application of emergency brakes as soon as it rounded the curve and the truck was seen, is both vague and equivocal. We find, as a matter of law, that no reasonable explanation was given by appellant for such vagueness and equivocation. Accordingly, we will construe the testimony against appellant in the manner most unfavorable to his position, and we conclude that the train could not have been stopped before hitting the truck even if the emergency brakes had been applied as soon as the train rounded the curve and the vehicle was in view (about one-and-one-half miles away). Moreover, there exists no evidence of record as to when or why the truck stopped on the crossing tracks. In view of the posture of the record, the trial court did not err in granting a directed verdict in behalf of appellees Cannon, Walsh, and National, where as here, " ' "plaintiff simply fails to prove his case" ' " (*Neal v. Miller*, 194 Ga. App. 231, 233 (390 SE2d 125)).

3. Appellant asserts the trial court erred in admitting surveillance

tapes that appellant had requested and of which he was not informed or given access to until the evening of the second day of trial, notwithstanding appellant's pretrial request by interrogatories for the disclosure of any surveillance or tapes of appellant. Although Southern's written response to the interrogatories is not included in the record, counsel for Southern stated on the record, without contradiction by appellant, that in response to these questions Southern objected to the question and declined to answer for the reasons stated in their objection, and that they neither admitted nor denied having appellant under surveillance or having tapes of him. The record fails to establish and support a claim that Southern in fact deliberately withheld information as to the surveillance and tapes to prejudice appellant. Compare *Jones v. Atkins*, 120 Ga. App. 487, 490-491 (171 SE2d 367). In the absence of a deliberate withholding for improper purposes, it is the general rule that "[w]hen a party proffers at trial evidence which should have been disclosed during discovery, exclusion of the proffered evidence is not an authorized sanction. The proper sanction is to order a postponement or a mistrial." *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383); compare *Jones*, supra at 491 (exclusion proper only where party deliberately withholds).

Moreover, appellant was given three full days in which to prepare before the tapes were admitted in evidence. When the tapes were admitted, appellant did not request a postponement. Although appellant did state that he was renewing his motion for mistrial, just before the jury was recalled and the tapes introduced when trial resumed following weekend recess, the record reveals that the only prior motion for mistrial made by appellant was in regard to the issue addressed in Division 5, infra, and was not related to the ruling regarding the videotapes. Appellant's renewal of a mistrial motion, if intended to relate to the issue of admissibility of the tapes, was not in proper form. Cf. *Gully v. Glover*, 190 Ga. App. 238, 241 (4) (378 SE2d 411) (objection not in proper form). Appellant made no prior motion for mistrial regarding the tapes; he could not *renew* a motion which he had not made. Further, in view of the time given appellant's counsel to review the tapes, and no claim by counsel following the weekend recess that he had been unable to complete his review of the videotapes, there would have been no breach of discretion in denying a motion for mistrial due to admission of the tapes even had one been properly made. Further, appellant elected not to make any request for postponement after the weekend recess, either before the special investigator testified concerning the videotapes or before the admission of the tapes in evidence. While appellant did assert that he had not seen one particular tape, it was merely an edited version or summary of scenes from the other tapes appellant had been given, and no request for postponement was made for time to review the summa-

rized tape before it was shown to the jury.

Under the above circumstances, the trial court did not abuse its discretion in refusing to exclude the testimony. *City of Monroe v. Jordan*, 201 Ga. App. 332, 336 (4) (411 SE2d 511); compare *Sackett v. L. L. Minor Co.*, 244 Ga. 375 (1) (260 SE2d 37); *Nathan v. Duncan*, 113 Ga. App. 630, 631 (7) (149 SE2d 383).

4. Appellant asserts the trial court erred in admitting the videotapes because they were irrelevant, biased, unfair, and highly prejudicial. The tapes were offered as rebuttal evidence of appellant/plaintiff's testimony regarding the nature and extent of his injuries. The tapes showed appellant engaged in various activities requiring movement of his neck, arms and back, and his driving an automobile. Thus, the tapes had some logical relevance as to the scope of appellant's injuries and as to the issue of damages. "Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value '[t]he Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it.' " *West v. Nodvin*, 196 Ga. App. 825, 828 (3b) (397 SE2d 567); compare *McEachern v. McEachern*, 260 Ga. 320, 321 (1) (394 SE2d 92). " '[A]bsent a manifest abuse of discretion, a court's refusal to admit evidence on grounds of lack of relevance will not be disturbed on appeal.' " *Friedman v. Friedman*, 259 Ga. 530 (3) (384 SE2d 641). The trial court did not abuse its discretion when it overruled the objection to admissibility on the grounds of relevancy. Moreover, assuming without deciding that appellant properly raised an objection based on legal relevance (that the relevance of the evidence outweighed its prejudicial impact), we also find the trial court did not abuse its discretion (see generally *Carroll v. State*, 261 Ga. 553 (2) (408 SE2d 412)) in overruling that portion of the motion based on the grounds the evidence was biased, unfair, and highly prejudicial. Further, having examined the tapes in question, we are satisfied that the relevance of the tapes did outweigh any prejudicial impact thereof. Additionally, before the tapes were offered, the special investigator for the insurance company testified and proceeded without objection to lay a foundation for the admission of the videotapes which included stating briefly what the tapes depicted. In the course of this foundation testimony, the investigator testified as to which tapes showed appellant with an unidentified woman, which tapes showed him exiting or entering a motel with an unidentified woman, and which tapes showed him in the company of two unidentified women in one day. No objection was made to these testimonial descriptions as to the content of the various tapes; and " '[a]ll evidence is admitted as a matter of

course unless a valid ground of objection is [timely] interposed.'" *Scott v. State*, 206 Ga. App. 23, 26 (1c) (424 SE2d 328). As the jury thus had testimonial evidence before it regarding appellant's various meetings with unidentified women, and his entry and exiting of a motel with an unidentified woman, any pictorial representation of this conduct in the videotapes would merely be cumulative of the testimony to this effect and previously received in evidence without objection. Thus, if error had occurred due to the pictorial representation of such conduct, it would be harmless. See *Young v. State*, 191 Ga. App. 651, 653 (2) (382 SE2d 642) (evidence harmless where admissible evidence of same fact is before jury); *Platt v. National Gen. Ins. Co.*, 205 Ga. App. 705, 710 (1) (423 SE2d 387).

5. Appellant asserts the trial court erred in recognizing before the jury one of the senior partners of the firm representing Southern thereby exemplifying a biased attitude on the part of the court toward Southern. This incident was not transcribed, and this court cannot therefore review the verbatim exchange which occurred. On the record, appellant made a belated objection to the colloquy.

We find that the objection was not timely, and that by failing to call for an immediate out-of-court hearing on the matter, the trial court was deprived of an opportunity to give the jury prompt corrective instructions concerning the exchange. Appellant also made a motion for mistrial (and apparently subsequently renewed said motion), which the trial court denied. We find no abuse of discretion on the part of the trial court.

The record reflects the following offer by appellant: "The judge addressed the senior partner of the defendant's law firm when he came in the courtroom and had a seat *in the back of the courtroom.* . . . 'Hey, here comes a young lawyer, a good friend of mine.' All of this is taking place during direct examination while the plaintiff is putting up his case. . . . [T]he senior partner of defendant's law firm stands up and says: 'During my whole 58 years of practice of law I never learned nothing as a lawyer. . . .' And these comments go back and forth. At that time the judge should have recused himself . . . because it appears he's biased and partial toward the defense. Since the plaintiff's counsel made that motion, the judge has made just about every ruling against the plaintiff. His rulings have been punitive." (Emphasis supplied.)

The record provides no support for the claim that the trial court thereafter made punitive rulings against appellant. Further, nothing in this offer of proof establishes the senior partner was addressed by name or, in fact, was identified by the trial judge to the jury as the senior partner of Southern's law firm. Appellant did not request any voir dire of the jury concerning their knowledge of these matters. Error must be established affirmatively by the record and we will not

presume error. *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 830 (1) (386 SE2d 709); *Williams v. State*, 188 Ga. App. 496 (3) (373 SE2d 281); see *Gillespie v. Gillespie*, 259 Ga. 838 (388 SE2d 688). Moreover after the close of argument, the trial court charged the jury, inter alia, that: "I have not intended to do or say anything during the trial of this case . . . which would hint or suggest to you which of the parties I feel should prevail or what your verdict should be. My interest in this case has been to see that it was fairly presented . . . according to the law."

"Although Canon 3 (C) (1) of the Code of Judicial Conduct indicates a judge should disqualify himself in any proceeding in which his 'impartiality might reasonably be questioned,' the conversation between the judge and plaintiff in this case did not raise a reasonable question of the judge's impartiality." *Von Hoff v. Carmichael*, 204 Ga. App. 760, 762 (420 SE2d 643). Further, we find the trial court did not abuse its discretion in denying appellant's motions for mistrial.

6. Appellant's enumeration of error "E" asserts therein more than one separate charging error in violation of OCGA § 5-6-40. Accordingly, we elect not to review any of these claims of error. *Murphy v. State*, 195 Ga. App. 878 (6) (395 SE2d 76); compare *Morris v. State Farm &c. Co.*, 203 Ga. App. 839, 841 (6) (418 SE2d 119) and *Robinson v. State*, 200 Ga. App. 515, 518 (2) (408 SE2d 820).

*Judgment affirmed. Andrews, J., concurs. Pope, C. J., concurs in Divisions 1, 4, 6, and in judgment.*

DECIDED APRIL 14, 1993 —
RECONSIDERATION DENIED MAY 5, 1993

*Hillman J. Toombs*, for appellant.
*Neely & Player, Edgar A. Neely, Jr., William C. Thompson, Laura A. Shaw, Webb, Carlock, Copeland, Semler & Stair, D. Gary Lovell, Jr., Christopher G. Moorman*, for appellees.

